AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia



FILED
JUL 17 2019
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
Information Associated with Google Accounts of OkelloChatrie55@gmail.com and Google Account ID: 365520819283

Case No. 3:19sw 207

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A. This court has authority to issue this warrant under Title 18, United States Code, Sections 2703(c)(1)(A) and 2711(3)(A).

located in the __Northern__ District of __California__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2113 | Armed Bank Robbery |

The application is based on these facts:
See Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Joshua Hylton, FBI, TFO
*Printed name and title*

Reviewed by AUSA/SAUSA:
Kenneth R. Simon, Jr.

Sworn to before me and signed in my presence.

Date: July 17, 2019

/S/
David J. Novak
United States Magistrate Judge
/S/
*Judge's signature*

City and state: Richmond, Virginia

Honorable David J. Novak, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH GOOGLE ACCOUNTS OF<br><br>OKELLO CHATRIE, with user accounts: **Okellochatrie55@gmail.com** and Google Account ID: 365520819283 (TARGET ACCOUNT)<br><br>THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE, INC. | 3:19-SW 207 |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Joshua P. Hylton, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with four Google user ID(s): **Okellochatrie55@gmail.com and Google Account ID: 365520819283 (TARGET ACCOUNT)** which is stored at premises owned, maintained, controlled, or operated by Google, Inc. ("Google"), is an internet based social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2. Your Affiant is a law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to

conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

3. Your Affiant has over seven years of law enforcement experience stemming from employment as a police officer with the Chesterfield County Police Department. Currently, I am a duly appointed Task Force Officer with the Federal Bureau of Investigation (FBI) and have been so since December 2016. I am assigned to the Richmond FBI's Central Virginia Violent Crimes Task Force (CVVCTF) and my duties include investigating bank robberies, armored car robberies, extraterritorial offenses, kidnappings, armed carjackings, and theft of government property. I have investigated numerous criminal violations and have obtained arrest and search warrants. I have personally participated in the investigation set forth below. The crimes I investigate are violent, usually involving two or more individuals, and I am familiar with the methods violent offenders use to conduct their illegal activities, to include their communication methods.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based upon my training and experience and the facts as set forth in this affidavit, I submit there is probable cause to believe that violations of 18 U.S.C §2113 have been committed by **OKELLO CHATRIE**. I submit there is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

## PROBABLE CAUSE

6. The United States through the FBI's CVVCTF is conducting a criminal investigation of OKELLO CHATRIE in relation to an armed bank robbery, in violation of Title 18 U.S.C. § 2113.

7. On May 20, 2019, at approximately 4:52 p.m. eastern standard time, the Call Federal Credit Union located at ▇ Call Federal Drive, Midlothian, VA 23112 was robbed of $195,000 by an armed gunman. At the time, six victims—a mix of customers and employees—were inside the Credit Union. The Credit Union is National Credit Union Administration (NCUA) insured, NCUA Number: 15209.

8. The unknown subject entered the Credit Union, approached victim-teller, J.W., and presented a note demanding $100,000 and threatening the victim-teller's life: "I've been watching you for sometime now. I got your family as hostage and I know where you live, If you or your coworker alert the cops or anyone your family and you are going to be hurt. I got my boys on the lookout out side. The first cop car they see am going to start hurting everyone in sight, hand over all the cash, I need at least 100k and nobody will get hurt and your family will be set free. Think smartly everyone safety is depending and you and your coworkers action so I hope they don't try nothing stupid."

9. After reading this note, J.W. told the subject that she did not have access to that amount of money. The subject then produced a silver and black firearm, directing the victim-teller and the then-unaware customers and employees at gunpoint to move to the center of the lobby and get on the floor. These six victims were then made to walk behind the teller counter to the area where the bank's safe was located.

10. Once near the safe, the subject forced everyone to their knees at gunpoint and demanded that the bank manager open the safe. After the safe was opened, the subject provided the manager with a black and red bookbag in which to place the currency. After acquiring $195,000.00 in United States currency belonging to Call Federal Credit Union, the subject fled the area on foot.

11. After the armed robber left the bank, law enforcement responded. Upon reviewing video surveillance captured inside and outside the bank, law enforcement discovered the following: (1) prior to the robbery, the subject came from behind the southwest corner of an adjacent building, namely Journey Christian Church, at approximately 4:48 p.m.; (2) the subject approached the front entrance of the Credit Union holding a cell phone to the side of his face with his right hand, as if speaking with another party; (3) upon reaching the front entrance of the Credit Union, the subject stood outside for several minutes before entering the bank at approximately 4:52 p.m.; (3) the subject robbed the Credit Union using a silver and black firearm, departing at approximately 4:56 p.m.; and (4) when exiting, the subject ran towards the southwest corner of Journey Christian Church at approximately 4:57 p.m.

12. On May 20, 2019, law enforcement interviewed the six victims of the armed robbery as well as a witness from Journey Christian Church. The victim-teller described the subject as an approximately 27-33-year-old black male with a height of 6'00", weight of 170 lbs., and thin/slender build. She went on to describe him as having short, braided hair, a scruffy beard, and a Jamaican accent. Five of the six witnesses recall a strong Jamaican accent. When asked about his clothing, the victims stated that the subject was wearing a gray bucket-style hat, reflective sunglasses, a gray long-sleeved shirt, a yellow and orange reflective work vest, blue jeans, black

tennis shoes, and a black and red backpack. The firearm brandished during the robbery was silver and black.

13. In addition to speaking with the victim-witnesses, your Affiant also interviewed Journey Christian Church's ▮▮▮▮▮ ▮▮ ▮▮. recalled his encounter with a suspicious individual on May 20, 2019, at approximately 4:30 to 4:40 p.m. ▮▮ advised that while exiting through a back door of Journey Church that is located on the southwestern corner of the building, he encountered a dark blue Buick sedan parked in the fire lane approximately four (4) feet from his vehicle. ▮▮ further described the Buick as a "newer car, somewhere between 2010-2015 model, with no specific identifiers to note (decals, rims, spoiler, etc.)." ▮▮ recalled seeing one occupant in the dark blue Buick sedan—a black male wearing reflective sunglasses, reclined in the driver's seat.

14. On June 14, 2019, Your Affiant applied for and obtained a search warrant from a magistrate judge with the Chesterfield County Circuit Court. The search warrant authorized the search of records possessed by Google, Inc., specifically information concerning any Google Account within a certain geographical area (delineated by latitude and longitude) of the Credit Union and surrounding area between 4:20 p.m. and 5:20 p.m. The geographical area focused upon the Credit Union and Journey Christian Church.

15. Based upon Google's return of anonymized information, your Affiant discovered a Google Account that: (1) was near the southwestern corner of Journey Christian Church prior to the robbery at approximately 4:30 to 4:40 p.m.—the time period ▮▮ recalled encountering a suspicious individual wearing reflective glasses in a blue Buick sedan; (2) was near the southwestern corner of Journey Christian Church prior to the robbery at approximately 4:48 p.m.; (3) was inside the Credit Union during the time of the robbery; and (4) immediately left the area

5

following the robbery, leaving from the southwestern corner of Journey Christian Church. This same Google Account traveled directly from the area of the bank to ▮ Mason Dale Drive, North Chesterfield, VA 23234.

16. Upon your Affiant's request for specific subscriber information for this Google Account, as provided for in the June 14, 2019, search warrant, Google provided the following subscriber information: Name: **Jamaican Media**; Email: **Okellochatrie55@Gmail.com**; and Google Account ID: **365520819283**.

17. A utilities inquiry of ▮ Mason Dale Drive, North Chesterfield, VA 23234 shows that OKELLO CHATRIE is listed as a subscriber. Based on the similarity between OKELLO CHATRIE's name and the email associated with the Google Account referenced above, Your Affiant utilized various databases to glean additional information about OKELLO CHATRIE.

18. These searches revealed that CHATRIE is a 24-year-old black male of Jamaican birth, 6'0" tall, and weighing 180 lbs. In addition, a 2018 photograph shows him with braided hair and an unkempt beard.

19. In light of the physical similarities between CHATRIE and the subject involved in the Credit Union robbery, your Affiant conducted a vehicle inquiry on CHATRIE, which indicated that CHATRIE owns a blue 2010 Buick Lacrosse. A license plate reader report indicated OKELLO CHATRIE's dark blue Buick sedan has been observed at ▮ Mason Dale Drive, North Chesterfield, VA 23234 (an adjacent address of ▮ Mason Dale Drive, North Chesterfield, VA 23234). The photographs associated with the report revealed, however, that the vehicle was parked at ▮ Mason Dale Drive, North Chesterfield, VA 23234.

20. A law enforcement inquiry of OKELLO CHATRIE revealed that on April 1, 2018, CHATRIE brandished a 10 mm Glock, model G20 pistol at his father and threatened to kill him.

In response to the domestic disturbance, Chesterfield County law enforcement officials took CHATRIE and his firearm into custody. CHATRIE's charges were later nolle prossed. His pistol was never returned to him.

21. As a result, your Affiant conducted a firearm gun log search for CHATRIE. The gun log search indicated that CHATRIE purchased a silver and black 9mm G2C Taurus semiautomatic pistol on April 29, 2019, at Bob Moates Sports Shop, Inc., ▇ Hull Street Rd, Midlothian, VA 23112.

22. To further the investigation, your Affiant conducted an inquiry with the Virginia Employment Commission. This search revealed that CHATRIE was employed with Home Depot during the first quarter of 2019. On July 12, 2019, your Affiant visited a local Home Depot and learned that CHATRIE was no longer employed with Home Depot.

23. Home Depot then shared the following personal information for CHATRIE: Home Address: ▇ Mason Dale Drive; Primary Contact: (804) 475-8298; and Email: **Okellochatrie55@gmail.com**. The primary contact email provided by Home Depot matches the email address associated with the **TARGET ACCOUNT**.

24. An inquiry of CHATRIE's primary contact number, (804) 475-8298, showed that the service provider is Sprint. Furthermore, OKELLO CHATRIE is listed as the subscriber. Cell phones are arguably the predominant way people communicate in modern society. With the advent of smartphone technology and all of the functions such devices offer, for many people the mobile phone has become as essential to have on their person as any item of clothing. With regard to criminal activity, it is well known that coconspirators frequently utilize cellular telephones to communicate with each other via voice calls, text messages, and emails, and the internet, permitting them to plan, coordinate, and execute their crimes.

25. As such, your Affiant has coordinated surveillance of ▮ Mason Dale Drive, North Chesterfield, VA 23234. However, neither CHATRIE nor his dark blue Buick Lacrosse have been observed there.

26. Based on the totality of facts and circumstances referenced herein, your Affiant believes it is probable that CHATRIE is responsible for the armed robbery of the Call Federal Credit Union. Furthermore, there is probable cause to believe that CHATRIE is currently utilizing the **TARGET ACCOUNT**. Based on the foregoing, there is probable cause to believe that the location information of the **TARGET ACCOUNT** from May 1, 2019 through July 15, 2019, will produce evidence of the crime committed by CHATRIE, including the whereabouts of his dark blue Buick sedan, locations utilized and frequented by CHATRIE, items used in the commission of the robbery (the specific clothing and firearm used in the armed robbery), fruits of the crime, the **TARGET ACCOUNT**'s primary user(s), and any possible co-conspirators.

27. Additionally, based on the foregoing, the information likely to be obtained from the requested cell site location records for the **SUBJECT TELEPHONE** during the time period of **May 1, 2019 through July 15, 2019**, is relevant and material to an ongoing criminal investigation involving CHATRIE, and his involvement with the armed bank robbery, in violation of Title 18 United States Code Section 2113, on May 20, 2019.

28. In my training and experience, I know that when people act in concert with one another to commit a crime they frequently utilize cellular telephones to communicate with each other through voice calls, text messages, and emails. These cellular telephones allow them to plan, coordinate, execute, and flee the scene of crimes. Furthermore, I know people often take pictures utilizing their cellular telephones that may implicate them in a crime, i.e., possessing a firearm, posing with large quantities stolen items, or large amounts of cash.

## BACKGROUND RELATING TO GOOGLE AND RELEVANT TECHNOLOGY

29. A cellular telephone or mobile telephone is a handheld wireless device used primarily for voice communication through radio signals. Cellular telephones send signals through networks of transmitter/receivers called "cells," enabling communication with other cellular telephones or traditional "landline" telephones. Cellular telephones rely on cellular towers, the location of which may provide information on the location of the subject telephone. Cellular telephones may also include global positioning system ("GPS") technology for determining the location of the device.

30. Google is an Internet company which, among other things, provides electronic communication services to subscribers. Google allows subscribers to obtain email accounts at the domain name gmail.com. Subscribers obtain an account by registering with Google. During the registration process, Google asks subscribers to provide basic personal information. Therefore, the computers of Google are likely to contain stored electronic communications (including retrieved and unretrieved email for Google subscribers) and information concerning subscribers and their use of Google services, such as account access information, email transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

31. In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information

9

may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that even if subscribers insert false information to conceal their identity, I know that this information often provide clues to their identity, location or illicit activities.

32. In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of login (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

33. As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account. Further, information maintained by the email provider can show how, where, and when the account was accessed or used. Based on my training and experience, I have learned that Google also maintains records that may reveal other Google accounts accessed from the same

electronic device, such as the same computer or mobile device, including accounts that are linked by Hypertext Transfer Protocol (HTTP) cookies, which are small pieces of data sent from a website and stored in a user's Internet browser.

34. Google has developed an operating system for mobile devices, including cellular phones, known as Android. Nearly every cellular phone using the Android operating system has an associated Google account and users are prompted to add a Google account when they first turn on a new Android device.

35. Based on my training and experience, I have learned that Google collects and retains location data from Android-enabled mobile devices when a Google account user has enabled Google location services. The company uses this information for location-based advertising and location-based search results. This information is derived from GPS data, cell site/cell tower information, and Wi-Fi access points.

36. Location data can assist investigators in understanding the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (e.g., location information integrated into an image or video sent via email).

37. Therefore, the servers of Google are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Google, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

38. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Google to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

39. Based on the foregoing, I request that the Court issue the proposed search warrant. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,

_____
Joshua P. Hylton
Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to before me on this 17th day of July, 2019

/S/
_____
David J. Novak
United States Magistrate Judge

12

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the TARGET ACCOUNT:

OKELLO CHATRIE with user accounts:

**Okellochatrie55@Gmail.com** (**TARGET ACCOUNT**); and

**Google Account ID: 365520819283**.

From **May 1, 2019 to July 15, 2019,** including the associated location data, which is stored at premises owned, maintained, controlled, or operated by Google, Inc. **1600 Amphitheater Parkway, Mountain View, California 94043**.

## ATTACHMENT B

I. **Information to be Disclosed by Google**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google Inc. ("Google"), including location information or records, files, logs, or information that have been deleted but are still available to Google containing location information, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Google is required to disclose the following information to the government for each user ID listed in Attachment A, from **May 1, 2019 to July 15, 2019,** including but not limited to:

(a) All contact and personal identifying information, including: full name, user identification number, birth date, gender, contact e-mail addresses, Google passwords, Google security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers;

(b) All activity logs for the account and all other documents showing the user's posts and other Google activities;

(c) All Location data including GPS, Cellular, WiFi, or other in the custody or control of Google.

(d) All "check ins" and other location information;

(e) All IP logs, including all records of the IP addresses that logged into the account[1];

---

[1] "Logged-in" means to access the account using authentication credentials (*e.g.,* passwords, PINS, *etc.*), not merely view the account from a different Facebook User ID account or publicly via the Internet.

14

    (f)    The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

**II.**    **Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations 18 U.S.C § 2113, involving **OKELLO CHATRIE** from **May 1, 2019 to July 15, 2019**, including, for the User ID identified on Attachment A, information pertaining to the following matters:

    (a)    Any postings or comments, photographs, or correspondence relating to the robbery of any commercial business or to aid and abet in or conspiracy to do so;

    (b)    Ay postings, comments, photographs, or correspondence relating the purchase or use of a firearm for the purpose of committing a robbery of a commercial business;

    (c)    Evidence indicating how and when the Google account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Google account owner;

    (d)    Evidence indicating the Google account owner's state of mind as it relates to the crime under investigation;

    (e)    The identity of the person(s) who created, used, or communicated with the user ID regarding the matters described above in Paragraphs II(a) and II(b) above, including records that help reveal their whereabouts.